UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
WESLEY J. LEE,

Plaintiff,

-against-

POUGHKEEPSIE CITY SCHOOL DISTRICT,

Defendant.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

06 Civ. 4660 (KMK) (GAY)

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:

Plaintiff *pro se* Wesley Lee, age sixty-two, is a dark-complexioned African-American. He claims that his employer, the Poughkeepsie City School District, discriminated against him because of his age and race in violation of the Age Discrimination in Employment Act of 1967, as amended, ("ADEA") 29 U.S.C. § 621 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff alleges that he was denied compensation equivalent to that of other coordinators/administrators who are lighter-skinned, white and/or younger. Specifically, plaintiff contends that the former Superintendent of Schools, Robert Watson, failed to honor his numerous promises to plaintiff to recommend to the Board of Education ("the Board") that plaintiff's salary be increased to $75,000, retroactive to his date of hire. Plaintiff maintains that Watson, who is African-American, broke said promises because of his animus towards older, dark-skinned African-Americans. Presently before this Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"). For the reasons set forth below, I respectfully recommend that defendant's motion should be granted.

## I. BACKGROUND

The following facts–taken in the light most favorable to plaintiff–are gleaned from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions. Any disputes of material fact are noted.

Watson, a dark-skinned man of African-American descent, was employed as Superintendent of Schools for the Poughkeepsie City School District from July 15, 2000 until February 9, 2006. In September 2000, based upon Watson's recommendation, the Board appointed plaintiff to the position of Program Coordinator for the Even Start Program at a salary of $40,000 per year. The salary of each of the District's Coordinators is related to the source of the program's funding. Plaintiff's position was fully funded by federal grant; thus, his salary was paid from grant monies and not from the District's general budget. The Board had the authority to supplement administrative grant programs with funds from the general budget.[1]

In July 2001, plaintiff received a cost-of-living increase in salary. In October 2001, plaintiff requested an $8,000 raise. Prior to his request, plaintiff procured an increase in the Even Start Grant sufficient to cover his proposed salary increase. Following Watson's recommendation, the Board granted plaintiff's request and his salary was increased by $8,000. However, the District required plaintiff to amend the budget for State approval (reflecting the increase in salary) because the District did not

---

[1] Defendant contends that the Board's general policy was to decline to do so.

want to be obligated to pay the $8,000 wage increase out of its general budget.

During his tenure as Program Coordinator for the Even Start Program (from September 2000 to August 2006), plaintiff's salary ultimately increased to $55,000. Each salary increase was effectuated by Watson's recommendation to the Board and its adoption of Watson's recommendation. In August 2006, the Even Start Program was terminated and, as a result, plaintiff was laid off.

On or about October 12, 2006, plaintiff was appointed to the position of Program Coordinator for the 21st Century After-School Program at a salary of $75,000 per year, fully-funded by grant monies. The job description for said position is substantially similar to that of plaintiff's prior position. Plaintiff argues, based on Watson's alleged promises, that he should have received $75,000 per year during his tenure as Program Coordinator for the Even Start Program; accordingly, plaintiff commenced the instant action wherein he seeks retroactive compensation from September 2000 through August 2006.

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial." FRCP

56(e).

When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Caution should be exercised in addressing summary judgment motions in discrimination cases where intent and state of mind are at issue because "careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000) (citations omitted). Nonetheless, the Second Circuit has expressly "remind[ed the] district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quotation and citation omitted). On the one hand, mere conclusory allegations of discrimination will not defeat a summary judgment motion; a plaintiff in a discrimination case must proffer "concrete particulars" to substantiate his claim. See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). On the other hand, courts must be aware of the fact that "discrimination will seldom manifest itself overtly." Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999). Courts

must therefore "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." Id. Thus, the ultimate question in deciding a summary judgment motion in a discrimination case "is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances." Id.

**III. SUMMARY JUDGMENT ANALYSIS: TITLE VII AND ADEA**

In the absence of direct evidence of discrimination, courts analyze claims brought under Title VII and the ADEA pursuant to the three-step burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000). Under the McDonnell-Douglas framework, plaintiff must first establish a prima facie case of discrimination by demonstrating that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was performing his duties satisfactorily; and (4) the circumstances surrounding the employment action give rise to an inference of discrimination. See Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005). Plaintiff's burden of establishing a prima facie case is "minimal." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If the plaintiff establishes his prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised and the burden of production then shifts to the employer "to articulate some legitimate nondiscriminatory reason" for its actions. See Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc). "The employer's explanation must be clear and specific, so that the employee has an opportunity to demonstrate pretext." Hill v. Taconic Dev. Disabilities Serv.

Office, 181 F. Supp.2d 303, 317 (S.D.N.Y. 2002).

"Should the defendant carry this burden, the plaintiff must then demonstrate that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. See St. Mary's Honor Ctr., 509 U.S. at 507-08. In determining whether the plaintiff has met this burden, the court must take a "case-by-case" approach that weighs "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case.'" James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148-49 (2000)). In other words, although the burden of production shifts, "the ultimate burden rests with the plaintiff to offer evidence sufficient to support a reasonable inference that prohibited [age, gender, race or national origin] discrimination occurred." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quotation and citation omitted).

## IV. TIMELINESS

Plaintiff's claims are premised upon Watson's alleged failure to secure a $75,000 yearly salary for plaintiff while he was Program Coordinator for the Even Start Program. Plaintiff asserts that Watson promised nine times, beginning in September 2000 at the time of plaintiff's hire, to recommend to the Board that plaintiff's salary be increased. Defendant argues that plaintiff's claims are time-barred because he failed to timely file charges with the EEOC.

A New York claimant who files a Title VII or ADEA complaint in federal court must first file a charge with the EEOC before the expiration of 300 days following the

alleged discriminatory incident. See 42 U.S.C. § 2000e-5(e) (Title VII); 29 U.S.C. §§ 626(d), 633(b) (ADEA); Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906-07 (2d Cir. 1997) (ADEA); Butts v. City of New York Dep't of Housing, 990 F.2d 1397, 1401 (2d Cir. 1993) (Title VII). Here, plaintiff filed charges with the EEOC on September 1, 2004; thus, plaintiff's claims are time-barred if they are premised upon incidents which occurred before November 6, 2003.

Plaintiff alleges that Watson first promised to recommend a salary increase at or about the time of plaintiff's hiring, in September 2000, and made subsequent promises thereafter. Plaintiff claims that Watson's last promise occurred on October 23, 2003, at which time he allegedly agreed to recommend plaintiff's salary adjustment to the Board on November 19, 2003. Watson's alleged failure to make the recommendation on November 19, 2003 is the sole alleged discrete act of discrimination which falls within the statutory time frame and, therefore, is the only claim that is not time-barred.

Nonetheless, plaintiff argues that all of Watson's alleged promises may serve as the basis for the instant action because plaintiff's disparate pay continued throughout his tenure as Program Coordinator for the Even Start Program. The Supreme Court recently addressed the timeliness of disparate pay claims under Title VII and stated that "[t]he EEOC charging period is triggered when a discrete unlawful practice takes place. A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." See Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S. Ct. 2162, 2169 (2007). The Supreme Court held, accordingly, that a plaintiff who alleges a discriminatory pay disparity under Title VII should file "an EEOC charge

within [300] days after each allegedly discriminatory pay decision was made." See id. Here, each of Watson's alleged failures to recommend plaintiff's salary increase to the Board constitutes a discrete, allegedly discriminatory, pay decision. Plaintiff, however, failed to file timely EEOC charges relating to each of Watson's alleged failures–except for the last. Accordingly, I conclude, and respectfully recommend, that plaintiff's claims are time-barred except to the extent they are based on Watson's alleged failure to recommend to the Board on November 19, 2003 that plaintiff's salary be raised.

## V. PLAINTIFF'S RACE AND AGE CLAIMS

Plaintiff claims that Watson refused to recommend to the Board on November 19, 2003 that plaintiff's salary be raised because he is an older, dark-skinned African-American. There is no dispute that he has satisfied the first three prongs of his prima facie case; the fourth prong, however, is contested. Defendant argues that it is entitled to summary judgment because plaintiff proffers no evidence showing that the circumstances surrounding Watson's alleged failure to provide the recommendation to the Board on November 19, 2003 give rise to an inference of discrimination.

Plaintiff argues that an inference of discrimination arises from the fact that his salary was not equal to that of other District Program Coordinators. Plaintiff may establish the fourth element of his prima facie case by showing that he and the other Program Coordinators "were similarly situated in all material respects." See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997). While "their circumstances need not be identical, . . . there should be a reasonably close resemblance of facts and circumstances." Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001). In other words, the Program Coordinators to whom plaintiff refers "must have a situation

sufficiently similar to plaintiff's to support at least a minimal inference that the difference may be attributable to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001). Whether employees are similarly situated is ordinarily a question of fact. See Feingold v. New York, 366 F.3d 138, 154 (2d Cir. 2004). "This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." Harlen Assocs. v. Incorporated Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

Here, plaintiff fails to satisfy his burden of proffering evidence based upon which a reasonable jury could find that he and the other Program Coordinators to whom he refers were similarly situated. Plaintiff claims that an inference of discrimination arises because the following persons earned higher salaries than he: Jerome Elting, Frank Mulhern, John Rodriguez, Dwight Paine and Linda Flanagan. Jerome Elting was appointed on June 27, 2001 to the position of Safety and Security Supervisor, at an annual salary of $65,000. Frank Mulhern, Coordinator of Circle of Coverage Program Development at the Circle of Courage Learning Center, was appointed to his position on June 27, 2000 at an annual salary of $85,000. On June 27, 2000, the Board also appointed John Rodriguez to the position of Coordinator of Behavioral Management at the Circle of Courage Learning Center, at an annual salary of $75,000. Dwight Paine was appointed on June 23, 2004 to the position of Assistant to the Superintendent, at an annual salary of $75,000. Linda Flanagan held the position of Director of After School-Programs at an annual salary of $75,000–prior to plaintiff's appointment to the same position (which he currently holds) at the identical salary. Plaintiff's present position is fully-funded by grant monies from the Community Foundation of Dutchess

County, as it was when Linda Flanagan held the position. See Affidavit of Neville Smythe, ¶ 5-6.

As to Elting, Mulhern, Rodriguez and Paine, however, none of them were employed under a grant program as was (and is) the plaintiff. Instead, their salaries were paid entirely from the District's budget. See Affidavit of Maria L. McCabe in Opposition to Motion by Plaintiff Pro Se and in Support of Cross-Motion for Summary Judgment, at ¶¶ 5, 6, 8 and 11. Thus, a reasonable jury could not conclude that plaintiff was "similarly situated in all material respects" to either Elting, Mulhern, Rodriguez or Paine. Further, plaintiff fails to offer evidence of an instance where the Board increased the salary of a position fully-funded by grant monies by supplementing the salary with monies from the District's general budget. Finally, although plaintiff asserts that Linda Flanagan's salary was initially $40,000 and was later raised to $75,000, he offers no evidence in support of this contention. In sum, plaintiff proffers no evidence from which a reasonable jury could infer that the circumstances surrounding Watson's alleged failure to provide the recommendation to the Board on November 19, 2003 give rise to an inference of discrimination. Accordingly, I conclude, and respectfully recommend, that plaintiff's Title VII and ADEA claims of race and age discrimination must be dismissed.

**VI. NOTICE**

Pursuant to 28 U.S.C. §636(b)(1), as amended and Rule 72(b), the parties shall have ten (10) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and

mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Small v. Secretary of H.H.S., 892 F. 2d 5, 16 (2d Cir. 1989).

Requests for extensions of time to file objections must be made to the Honorable Kenneth M. Karas and not to the undersigned.

Dated: September 13, 2007
White Plains, New York

Respectfully Submitted,

George A. Yanthis

GEORGE A. YANTHIS, U.S.M.J.