UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WESLEY J. LEE,

                              Plaintiff,

          -v-

POUGHKEEPSIE CITY SCHOOL DISTRICT,

                              Defendant.

Case No. 06-CV-4660 (KMK)

<u>ORDER ADOPTING</u>
<u>REPORT & RECOMMENDATION</u>

KENNETH M. KARAS, District Judge:

On June 16, 2006, Plaintiff Wesley J. Lee filed this employment discrimination action

against Defendant Poughkeepsie City School District ("District").  The Complaint alleges that

Plaintiff was paid less for his services than other similarly situated employees because of his race

and age.

Plaintiff and Defendant have each moved for Summary Judgment.  Both motions were

referred to Magistrate Judge George A. Yanthis for a report and recommendation.[1]  On

September 13, 2007, Magistrate Judge Yanthis issued a Report and Recommendation concluding

that this Court should grant Defendant's Motion and deny Plaintiff's Motion.  Plaintiff

subsequently filed timely objections to the Report and Recommendation.

For the reasons stated below, the Court ADOPTS Magistrate Judge Yanthis's Report and

Recommendation, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS

Defendant's Cross-Motion for Summary Judgment.

---

[1]This case was referred to Magistrate Judge Yanthis by Judge Colleen McMahon, to
whom this case was originally assigned.  The case was subsequently reassigned to this Court on
August 6, 2007.

## I.  Factual Background

### A.  The Parties

Plaintiff is an African-American male who was employed by the District from September 2000 to August 2006, and again from October 2006 to June 2007.  (Def.'s Statement Under Rule 56.1 in Supp. of Mot. for Summ. J. ("Def.'s 56.1") ¶¶ 3, 34, 35; Pl.'s Obj to the Report and Recommendation ("Pl.'s Obj.") 2-3.)[2]  Plaintiff was born on January 20, 1945, and thus fifty-five years old when first hired by the District.  (Compl. 3.)

### B.  The Allegedly Discriminatory Conduct

Plaintiff was initially hired in early September 2000 as a coordinator of the Even Start Program.  (Def.'s 56.1 ¶ 3; Affirmation [in Support of Pl.'s] Mot. for Summ. J. ("Pl.'s First Affirmation") ¶ 2.)  Plaintiff's starting salary was $40,000.  (Def.'s 56.1 ¶ 3; Pl.'s First Affirmation ¶ 3.)   The $40,000 salary that Plaintiff received was commensurate with the salaries earned by the coordinators of the Even Start program who preceded Plaintiff.  (Def.'s 56.1 ¶ 9; Affirmation in Opp'n to Cross Mot. by Def. and in Supp. of Summ. Mot. by Pl. ("Pl.'s Second Affirmation") 14.)   Plaintiff's two immediate predecessors in the job, Margaret Fernandez and Janet Lind, were both Caucasian.  (Def.'s 56.1 ¶¶ 2, 9.)

According to Defendant, the salary of each coordinator employed by the District is determined by its funding source.  (Def.'s 56.1 ¶ 10.)  As Even Start program coordinator, Plaintiff's salary was funded by the federal Even Start grant, and Plaintiff understood at his

---

[2]Plaintiff has done an able job as a pro se plaintiff in compiling an extensive documentary record of his claims.  Many of the facts he alleges, however, are not specifically contained within the Complaint or his Rule 56.1 Statement.  Mindful of the Court's obligation to construe his papers to raise the strongest arguments they suggest, many of the facts here are drawn from the entirety of Plaintiff's submissions.

hiring that his salary would come from this grant, not from general school district funds.  (Def.'s 56.1 ¶ 11; Pl.'s Dep. 78-80.)  Other than Plaintiff, only two program coordinators employed by the District were paid out of federal grant funds rather than general school district funds. (Def.'s 56.1 ¶ 14; Resp. to Each Numbered Item in Def.'s Statement Under Rule 56.1 ("Pl.'s 56.1") ¶ 14.)  These two individuals – Sheree Green, an African-American woman, and Nancy Mellilli, a Caucasian woman – each started at the same $40,000 salary as Plaintiff.  (Def.'s 56.1 ¶¶ 13, 15; Pl.'s 56.1 ¶¶ 13, 15.)

Plaintiff's $40,000 salary lies at the center of this dispute.  Plaintiff alleges that Robert Watson, the former Superintendent of Schools who initially recommended that the School Board hire Plaintiff (Def.'s 56.1 ¶ 3), promised Plaintiff – on numerous occasions – that his salary would be adjusted to $75,000, and that the increased salary would be applied retroactively to his date of hire ( Pl.'s First Affirmation ¶ 3).  The figure of $75,000 represents the rough average salary of several other employees who, according to Plaintiff, shared similar duties despite having less education and experience than Plaintiff.  (*Id.* ¶ 5.)  Defendant disputes Plaintiff's assessment of the other employees' duties, noting the various ways in which those positions (and the qualifications necessary to be hired to those positions) differ from Plaintiff's employment situation.  (Def.'s 56.1 ¶¶ 1, 17-19.)   In addition, Defendant points out that Plaintiff, unlike the other employees he cites, was funded out of a dedicated grant program, not the school district's general budget.  (*Id.* ¶ 20.)

According to Plaintiff, Watson promised to increase Plaintiff's salary to $75,000 retroactively on nine separate occasions between September 7, 2000 and October 28, 2003.  (Pl.'s First Affirmation ¶ 3.)   Defendant acknowledges that at various times during Plaintiff's employment as Even Start coordinator, Plaintiff discussed with Watson and/or Plaintiff's

immediate supervisor, Karen Markeloff, Plaintiff's desire to see his salary increased to $75,000. (Def.'s 56.1 ¶ 21; Pl.'s 56.1 ¶ 21.)  Although Plaintiff did receive several raises while working for the District – his salary increased to $55,000 within six years (all from increases in grant funding) (Def.'s 56.1 ¶¶ 28) – these raises did not fulfill the promises allegedly made by Watson.

Watson's last alleged promise was made to Plaintiff on October 28, 2003.  (Pl.'s Affirmation ¶ 3.)  On that date, Plaintiff met with Watson and Markeloff, and Watson allegedly promised to make a recommendation at the School Board's November 19, 2003 meeting that Plaintiff's salary be increased to $75,000.  (*Id.*)  The Parties dispute whether Watson made this recommendation.  Defendant claims that Watson did make the recommendation, but that the School Board rejected the proposal because such an increase would have required the use of District funds over and above the funds available from the Even Start grant.  (Def.'s 56.1 ¶ 32.) School Board Member Stanley Merritt concurs with this rendition of events. (Stanley Merritt Aff. in Opp'n to Mot. by Pl. Pro Se and in Supp. of Cross Mot. for Summ. J. ("Merritt Aff.") ¶ 3.)  According to Defendant, this rejection reflected the District's reluctance to supplement grant-funded programs with money from the general school budget.  (Def.'s 56.1 ¶¶ 22, 32).

Plaintiff, on the other hand, contends that Watson never made the recommendation. (Pl.'s Second Affirmation 13.)  Plaintiff focuses particular attention on the fact that the recommendation never appeared in minutes of the public portion of the meeting.  (*Id*. 13.) Plaintiff further points out that Thomas L. Jefferson, a School Board member at the time, denies that Watson made such a recommendation on November 19, 2003.  (Thomas L. Jefferson Aff. in Opp'n to Cross. Mot. by Def. and in Supp. of Resp. by Pl. ("Jefferson Aff.") ¶ 2.)  Defendant responds to these points by noting that Watson's recommendation took place during the executive session (Merritt Aff. ¶ 3), a non-public portion of the School Board meeting which

goes unrecorded in the minutes (Maria L. McCabe Reply Aff. in Supp. of Cross-Mot. for Summ. J. ("McCabe Second Aff.") ¶ 4). In addition, Defendant notes that School Board member Jefferson was not recorded as present at the November 19, 2003 School Board meeting (McCabe Second Aff. ¶ 5), and thus was not in a position to know what matters were discussed in the closed-door portion of the School Board meeting. (Def.'s Reply Mem. of Law in Supp. of Cross-Mot. for Summ. J. 7.) While Defendant clearly has the better of this battle, it is not material to the resolution of the motions.

On September 1, 2004, 309 days after Plaintiff's meeting with Watson and Markeloff, and 287 days after the School Board meeting, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Def.'s 56.1 ¶ 33; Pl.'s 56.1 ¶ 33.) Plaintiff received a right to sue letter from the EEOC on March 24, 2006. (Def.'s 56.1 ¶ 33; Pl.'s 56.1 ¶ 33.)

In August 2006, the District's Even Start program was terminated and Plaintiff was laid off. (Def.'s 56.1 ¶ 34; Pl.'s 56.1 ¶ 34.) However, Plaintiff was rehired roughly two months later as the program coordinator of the 21st Century After-School Program, another grant-funded program. (Def.'s 56.1 ¶ 35; Pl.'s 56.1 ¶ 35.) Plaintiff's salary in the new position was $75,000 a year, the same salary received by the previous program coordinator, Linda Flanagan. (Def.'s 56.1 ¶ 35; Pl.'s 56.1 ¶ 35.) Plaintiff remained at this position for a little less than a year; by June 30, 2007, the grant was exhausted, and Plaintiff was again laid off. (Pl.'s Obj. 2-3.)

## II. Discussion

### A. Standard of Review

#### 1. Summary Judgment Standard

Summary judgment "should be rendered if . . . there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . ." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 253 (2d Cir. 2002). To defeat a motion for summary judgment, the non-movant must make a sufficient showing of proof on each element of the claim for which the non-movant bears the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that the moving party is not required "to produce evidence showing the absence of a genuine issue of material fact").

While courts are to be "particularly cautious" about granting summary judgment to employers in cases where the discriminatory intent of the employer is contested, *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997), "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Furthermore, though district courts must pay careful attention to affidavits and depositions which may reveal circumstantial proof of discrimination, *see Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994), courts are not to "treat discrimination differently from other ultimate questions of fact." *Abdu-Brisson*, 239 F.3d at 466 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 604 (2d Cir. 2006) (noting the caution with which the Second Circuit reviews the grant of summary judgment

in discrimination cases "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions[,]" but stating that "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact" (internal quotation marks omitted)).

Where a plaintiff is pro se, the plaintiff's submissions to the court are held to a "less stringent standard than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Pro se plaintiffs are "'entitled to a far more generous reading of their pleadings than would otherwise be afforded to one who is represented by an attorney.'" *Dimps v. Dist. Council 37*, No. 01-CV-1735, 2002 WL 206992, at *2 (S.D.N.Y. Feb. 8, 2002) (quoting *Richardson v. Sec. Unit Employees Council 82*, No. 99-CV-1021, 2001 WL 392089, at *1 (W.D.N.Y. Mar. 27, 2001)).

## 2. Review of the Magistrate Judge's Report and Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007) (quoting 28 U.S.C. § 636(b)(1)(c)). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 10 days after being served with a copy of the recommended disposition." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(c).

Where a party submits timely objections to a report and recommendation, as Plaintiff has here, the district court reviews the parts of the report and recommendation to which the party objected under a de novo standard of review. *See* 28 U.S.C. § 636(b)(1)(c) ("A judge of the

court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *see also Donahue*, 2007 WL 831816, at *1.  The district court may adopt those portions of a report to which no objections have been made, as long as those portions are not clearly erroneous.  *See Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991).

      <u>B.  Plaintiff's Objections to Magistrate Yanthis's Report and Recommendation</u>

      Plaintiff objects to Magistrate Judge Yanthis's dismissal of his discrimination claim, arguing that Magistrate Judge Yanthis erred in holding that Plaintiff had failed to establish a prima facie case of discrimination.  In particular, Plaintiff argues that Magistrate Judge Yanthis "has not cited a law authorizing a school district, or any other employer, to pay employees with the same title different salaries based on availability of grant moneys."  (Def.'s Obj. 1.)   In other words, Plaintiff argues that "the pot of money" from which an employee is paid cannot be the basis for finding that an employee is not "similarly situated" to his colleagues, and thus cannot justify differing salaries.  (Def.'s Obj. 3.)

C.  Analysis of Plaintiff's Discrimination Claims

    1.  Procedural Requirements[3]

Both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.,

and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 629 et seq, require that

a plaintiff file a charge with the EEOC prior to filing a federal court action.  *See Legnani v.*

*Alitalia Linee Aeree Italiane*, *S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam) ("Under both

Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely

complaint with the EEOC and obtained a right-to-sue letter.").  This charge must be filed within

300 days of the alleged discriminatory action.  *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §

626(d)(2); *see also Hill v. Citibank Corp*., 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004).  The filing

deadlines for a charge of discrimination act as a "statute of limitations" and a failure to timely

file a charge acts as a bar to a plaintiff's action.  *See Hill*, 312 F. Supp. 2d at 472.  This "statute of

limitations" begins to run when each discrete discriminatory act occurs.  *See Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Hill*, 312 F. Supp. 2d at 473; *see also*

*Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2165 (2007) ("Because a pay-setting

decision is a 'discrete act,' it follows that the period for filing an EEOC charge begins when the

act occurs.").

Here, Plaintiff filed his charge of discrimination with both the EEOC and the New York

State Commission on Human Rights on September 1, 2004.  (Compl. 4; Pl.'s Dep. 157.)  As a

---

[3]It is far from clear that Plaintiff has objected to Magistrate Judge Yanthis's conclusion
that the majority of Plaintiff's claims are time barred.  Plaintiff states that he "recognize[s] the
point of law cited by Judge Yanthis" that bars his claim due to the 300 day statute of limitations
– a statement which appears tantamount to a concession of the point.  (Pl.'s Obj. at 3.)  However,
in light of Plaintiff's pro se status, the Court will construe Plaintiff's objections liberally and
review Magistrate Judge Yanthis's timeliness finding as if Plaintiff had properly objected.

result, the statute of limitations had run on any discriminatory acts that occurred before November 6, 2003, the calendar date 300 days prior to the filing of Plaintiff's charge of discrimination.

As noted by Magistrate Judge Yanthis, Plaintiff alleges that on nine separate occasions, Watson promised to recommend to the School Board that Plaintiff's salary be increased. (Report and Recommendation 6; Pl.'s Obj. 3.) Only one of these alleged incidents, however, fits within the 300-day window. (Pl.'s First Affirmation ¶ 3 ("Mr. Watson promised to adjust Plaintiff's salary to $75,000.00, retroactively, approximately nine (9) times, from September 7, 2000 until October 28, 2003.").) On October 28, 2003, Watson allegedly promised Plaintiff that he would recommend a salary adjustment at the November 19, 2003 meeting of the School Board. Watson's alleged failure to make good on his promise is the only act alleged by Plaintiff which occurred within 300 days of his complaint to the EEOC. *See Ledbetter*, 127 S. Ct. at 2165 (holding that the period for filing an EEOC charge begins when the allegedly discriminatory pay-decision occurs). Thus, Plaintiff's claim related to the School Board meeting of November 19, 2003 is the only claim which is not barred as untimely.[4]

---

[4]The evidence presented by Defendant shows that Watson fulfilled his promise and asked the School Board to raise Plaintiff's salary. The Board, however, rejected Watson's recommendation, as the raise Plaintiff desired would have required the Board to use funds from the general budget to supplement the funds available from the federal Even Start grant. (Robert C. Watson Aff. in Opp'n to Mot. by Pl. Pro Se and in Supp. of Cross Mot. for Summ. J. ("Watson Aff.") ¶ 14; Merritt Aff. ¶¶ 4-5.) The evidence presented by Plaintiff contrary to this conclusion either does not effectively rebut Defendant's evidence (such as the absence of Watson's proposal in the Board meeting minutes) or is not admissible (such as the testimony of Board member Jefferson, who was not in attendance at the Board meeting, and thus cannot offer first-hand knowledge of the necessary events). Regardless, the Court may assume for the basis of this motion that Watson did not fulfill his promise, as whether or not Watson made the promise is largely immaterial. The issue in this case is whether the salary received by Plaintiff was the result of discriminatory conduct, not whether Watson did or did not fulfill a promise made to Plaintiff.

## 2. Analytical Framework

Charges of discrimination under Title VII and the ADEA are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In *McDonnell Douglas*, the Supreme Court established "an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). Under *McDonnell Douglas* and its progeny, the plaintiff has the ultimate burden of proving discrimination, regardless of whether or not the defendant offers evidence of a legitimate reason for the adverse employment action at issue. *See Reeves*, 530 U.S. at 142-43 (applying *McDonnell Douglas* to ADEA claim); *St. Mary's Honor Ctr.*, 509 U.S. at 506; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *James v. N. Y. Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000) (applying *McDonnell Douglas* to ADEA claim after *Reeves*); *Calabro v. Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 288 (S.D.N.Y. 2005) (holding that plaintiff ultimately has the burden of proving discriminatory animus on behalf of employer to survive summary judgment).

Production of evidence under *McDonnell Douglas* has three steps. First, the plaintiff must establish a prima facie case of discrimination. *See Reeves*, 530 U.S. at 142. To establish a prima facie case of discrimination, a plaintiff must show that: "(1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005) (citing *Farias v. Instructional Sys., Inc*., 259 F.3d 91, 98 (2d Cir. 2001)). The burden of establishing this prima facie case in employment discrimination cases is "'minimal.'" *See McGuinness v. Lincoln Hall*,

263 F.3d 49, 53 (2d Cir. 2001) (quoting multiple cases); *see also Burdine*, 450 U.S. at 253 ("The burden of establishing a prima facie case of disparate treatment is not onerous.").

If the plaintiff succeeds in establishing a prima facie case, "a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action." *Dawson*, 398 F.3d at 216. Defendant's burden "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509). If the defendant satisfies its burden by producing evidence of a legitimate reason for the alleged discrimination, the burden shifts back to the plaintiff, who must then present evidence that the defendant acted with a discriminatory motive. *See Reeves*, 530 U.S. at 143 ("Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with plaintiff.'") (quoting *Burdine*, 450 U.S. at 253) (alteration in original)); *St. Mary's Honor Ctr.*, 509 U.S. at 519 ("It is not enough, in other words, to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir. 1998) (holding that at summary judgment stage, plaintiff must establish a genuine issue of material fact regarding whether the employer's true motive was discriminatory). A plaintiff may meet his ultimate burden by persuading the court that the defendant's proffered explanation is only a pretext and that the plaintiff was indeed terminated for discriminatory reasons. "[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 255 n.10).

12

The burden shifting framework, however, does not affect the availability of summary judgment in Title VII cases. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997) ("[S]ummary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact."); *Abdu-Brisson,* 239 F.3d at 466 ("[S]ummary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

### 3. Burden Shifting Standard Applied to Plaintiff's Allegations of Discrimination

Magistrate Judge Yanthis concluded that Plaintiff had failed to establish prima facie case of discrimination. In particular, Magistrate Judge Yanthis found that Plaintiff had failed to satisfy the fourth element – that the adverse action taken against Plaintiff gave rise to "an inference of discrimination based on his membership in the protected class." *Dawson*, 398 F.3d at 216. A plaintiff can raise such an inference of discrimination and thus carry his burden "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). "A showing that the employer treated a similarly situated employee differently is 'a common and especially effective method' of establishing a prima facie case of discrimination . . . ." *McGuinness*, 263 F.3d at 53 (quoting *Abdu-Brisson*, 239 F.3d at 468). Indeed, Plaintiff has attempted to use this method here.

To be "similarly situated" means to be "similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). "In other words, where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness*, 263 F.3d at 54. While this question is typically a

13

question of fact, *see Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003), this rule "is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

In his position as coordinator of the Even Start program, Plaintiff started at a salary of $40,000. This salary was comparable to the coordinators he succeeded – Margaret Fernandez and Janet Lind – each of whom is Caucasian. (Def.'s 56.1 ¶¶ 2, 9.) Plaintiff argues, however, that as Even Start coordinator, he was "similarly situated" to a number of employees with different titles who earned substantially greater incomes, in particular Jerome Etling, Frank Mulhern, John Rodriguez, and Dwight Paine.[5] (Pl.'s First Affirmation ¶ 5.) Plaintiff asserts that the disparate treatment he received in comparison to Etling, Mulhern, Rodriguez, and Paine gives rise to an inference of discrimination.

Defendant responded to this claim by presenting the public job descriptions and qualification requirements for the jobs held by Etling, Mulhern, Rodriguez, and Paine. (Def.'s 56.1 ¶ 1; Jose Carrion Aff. in Opp'n to Mot. by Pl. Pro Se and in Supp. of Cross-Mot. for Summ. J. ("Carrion Aff.") ¶¶ 4-5, 7-8.) According to Defendant, each job entailed educational or experiential qualifications distinguishing it from Plaintiff's Even Start coordinator position. (Def.'s 56.1 ¶ 1; Carrion Aff. ¶¶ 3-5, 7-8.) Plaintiff does not rebut these job descriptions, which largely explain that the Even Start coordinator position was different in material ways from the

---

[5]Defendant states that Etling, Mulhern, Rodriguez, and Paine are "Hispanic, Caucasian, and African American," but does not specify their individual racial identities. (Def.'s 56.1 ¶ 18.) Plaintiff states that Etling is African-American, Rodriguez is Hispanic, and Mulhern and Paine are Caucasian. (Pl.'s Dep. 132-34.) In regard to the ages of the four employees, Defendant states that "Mulhern is in his late 50's; Paine is in his early 50's; Rodriguez is in his late 40's; and Etling is in his early 40's." (*Id.*)

14

positions held by Etling, Mulhern, Rodriguez, and Paine. Even granting Plaintiff's assertion that all coordinator-level positions have similar duties (Pl.'s Second Affirmation 3), "'the performance of some common tasks does not make jobs substantially equal when material differences also exist.'" *DeJesus v. Starr Technical Risks Agency, Inc*., No. 03-CV-1298, 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004) (quoting *Conigliano v. Horace Mann Sch*., No. 95-CV-3555, 2000 WL 45439, at *8 (S.D.N.Y. Jan. 19, 2000)). Thus, the unrebutted evidence presented by Defendant shows that material differences existed between the Even Start coordinator position held by Plaintiff and the coordinator positions held by the others. Accordingly, Plaintiff has not established an inference of discrimination by demonstrating that he was "similarly situated in all material respects" to the other coordinator level employees.[6]

Plaintiff argues, however, that the material differences between his job and those of Etling, Mulhern, Rodriguez, and Paine should not matter, as Plaintiff believes that none of the aforementioned employees was actually qualified for the jobs that he or she possessed. Plaintiff compares his educational background (Pl.'s Second Affirmation 4, 16-17) to the flaws in the qualifications of the aforementioned employees (*id*. at 16), and argues that his relatively lower salary gives rise to an inference of discrimination. This presentation of evidence, even if accurate, does not satisfy Plaintiff's prima facie case nor demonstrate that Defendant's actions were mere pretext for a discriminatory impulse. Plaintiff's arguments regarding his salary are barren of any evidence that attributes the salary disparity to improper race or age-related

---

[6]In addition, Plaintiff's employment further differed from that of Etling, Mulhern, Rodriguez, and Payne in that Plaintiff was paid out of a dedicated federal grant, while the others were paid out of general revenue. As noted in the Court's analysis of Plaintiff's arguments vis a vis Linda Flanagan, *infra*, employees who hold positions funded by different sources of revenue may not be "similarly situated in all material respects." *See Rieser v. Univ. of Cincinnati*, No. 04-CV-379, 2006 WL 1876886, at *8 (S.D. Ohio July 5, 2006).

discrimination. Instead, Plaintiff argues – with some credible support – that the decisions of Watson and the School Board were motivated by pervasive cronyism, rather than race or age discrimination. (*Id.* at 6, 13-14 (opining that Watson mislead the School Board about the qualifications of his "friends," which included Arrington, Mellilli, Green, Etling, Mulhern, Rodriguez, and Payne).) Mere proof of cronyism, however, does not demonstrate race-based or age-based animus, and cannot on its own satisfy Plaintiff's burden under either Title VII or the AEDA. *See Tappe v. Alliance Capital Mgmt. L.P.*, 177 F. Supp. 2d 176, 185 n.9 (S.D.N.Y. 2001) ("[A]n employer can fire an employee for any reason as long as the reason is non-discriminatory even if based on reasons that are 'unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility.'" (quoting *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1337 (2d Cir. 1997), *abrogated on other grounds*, *Reeves*, 530 U.S. 133)); *Harris v. N. Y. City Dep't of Homeless Servs. Eligibility Investigation Unit*, No. 97-CV-0432, 1998 WL 205334, at *7 (S.D.N.Y. Apr. 28, 1998) (stating that favoritism based on friendship does not suggest discriminatory animus against plaintiff); *see also Foster v. Dalton*, 71 F.3d 52, 56 (1st Cir. 1995) ("Title VII does not outlaw cronyism . . . ."). Accordingly, the evidence presented by Plaintiff that compares and contrasts Plaintiff's salary to those of Etling, Mulhern, Rodriguez, and Payne fails to demonstrate that Defendant intentionally discriminated against Plaintiff.

Plaintiff also argues that he was "similarly situated" to Linda Flanagan, another employee of the District, and that Flanagan's higher salary gives rise to an inference of discrimination. From July 1, 2004 to October 11, 2006, Linda Flanagan was employed by the District as the Program Coordinator of the 21st Century After-School Program. (Def.'s 56.1 ¶ 37.) Her salary of $75,000 was paid by a grant from the non-profit Community Foundation of

Dutchess County.  (Nevill Smythe Aff. ("Smythe Aff.") ¶ 1.)  Prior to working for the District, Flanagan was employed by Family Services, another organization that provides after-school services.  (*Id.* ¶ 3.)  Approximately one year after Flanagan began working for Family Services, the Community Foundation, Family Services, and the District decided that the program that employed Flanagan would be best administered by the District rather than by Family Services.  (*Id.* ¶ 4.)  As a result, the District became the recipient of the Community Foundation grant, and used the funds to create a position for Flanagan that mirrored her prior role with Family Services.  (*Id.* ¶ 5.)  Flanagan remained at this position until October 2006, when the Dutchess County Department of Personnel determined that she could not remain employed by the District without civil service status.  (*Id.* ¶ 6.)  Flanagan's employment was terminated, and Plaintiff, who had been terminated two months earlier when the Even Start grant ran out, was hired to replace her, at the same salary previously paid to Flanagan.  (*Id.*)

Defendant concedes that the job description of the program coordinator of the 21st Century After-School Program is "substantially similar, though not identical" to the job description of the program coordinator of the Even Start program, Plaintiff's previous job.  The most significant difference between the two positions was the source and amount of funding for each:  the Even Start program was funded by a federal grant, while the 21st Century After-School Program was funded by a grant from the Community Foundation.  Plaintiff argues that the difference in source funding alone is insufficient to show that he and Flanagan were not similarly situated, and thus the District's failure to raise Plaintiff's salary to Flanagan's level going back to July 2004 gives rise to an inference of discrimination.

Magistrate Judge Yanthis took a dim view of Plaintiff's argument, concluding that the differing sources of funding demonstrated that Plaintiff was not "similarly situated in all material

respects" to the other employees, and that no reasonable jury could conclude otherwise. (Report and Recommendation 10 (internal quotation marks omitted).) This Court also has serious doubts about Plaintiff's argument. There is precedent for distinguishing among employees based on the funding which subsidizes their salaries. In *Rieser*, 2006 WL 1876886, at *8, for example, the court held that plaintiffs were not "similarly situated in all material respects" to their colleagues because, among other things, plaintiffs' salaries were "funded from different sources," including outside grants. However, the Court need not determine whether the difference in funding sources is sufficient to show that Plaintiff was not "similarly situated in all material respects" to Flanagan. Even assuming that Plaintiff and Flanagan were similarly situated in all material respects – an arguable point at best – Plaintiff has not presented any evidence from which to infer that the differences in salary between Plaintiff and Flanagan were attributable to discrimination based on race or age.[7]

Moreover, Defendant has satisfied its burden of production by presenting several legitimate non-discriminatory reasons for the salary differences between Plaintiff and Flanagan. Plaintiff's salary as Even Start coordinator was paid out of a limited federal grant program. The

---

[7]Plaintiff claims that statistical evidence backs up his claim that his salary disparity was the result of race discrimination. (Pl.'s Statement of Material Facts on Mot. for Summ. J. ¶ 6.) Plaintiff does not present *any* evidence establishing the authenticity of these numbers. However, even assuming that this evidence is credible, Plaintiff cannot establish that Defendant was motivated by discriminatory intent by appealing to statistics alone. "Statistics alone are insufficient in a disparate-treatment claim because an individual plaintiff must prove that he or she *in particular* has been discriminated against." *Drake v. Delta Air Lines, Inc*., No. 94-CV-5944, 2005 WL 1743816, at *6 (E.D.N.Y. July 21, 2005) (citing *Hudson v. Int'l Bus. Machs. Corp.*, 620 F.2d 351, 355 (2d Cir. 1980)) (emphasis in original); *see also Martin v. Citibank, N.A.*, 762 F.2d 212, 218 (2d Cir. 1985) ("[S]tatistical proof alone cannot ordinarily establish a prima facie case of disparate treatment under Title VII or § 1981."). "Thus, absent other sufficient evidence, statistics that might be admissible as probative circumstantial evidence of discrimination are not enough to establish a genuine factual dispute." *Bussey v. Phillips*, 419 F. Supp. 2d 569, 583 (S.D.N.Y. 2006); *see also Hudson*, 620 F.2d at 355 ("[Plaintiff] has failed to establish his case and the statistics standing alone do not create it.").

other two coordinator level employees who were paid out of federal grants – Sheree Green, an African-American woman, and Nancy Mellilli, a Caucasian woman – each started at the same salary as Plaintiff (Def.'s 56.1 ¶¶ 14-15), and over the course of employment actually earned *less* than Plaintiff did for comparable work (*Id.* at ¶¶ 28-29). Furthermore, while Plaintiff did earn less than Flanagan, an employee with similar job duties, that salary difference is explainable by the differing resources of the grant programs that funded their respective positions, not any demonstrable discriminatory intent. In fact, once Flanagan was terminated from her position, Plaintiff was hired to replace her, and then Plaintiff became the direct beneficiary of that grant program's relative largesse. These explanations satisfy Defendant's burden to produce legitimate non-discriminatory reasons for the salary differential. Plaintiff has not rebutted these reasons with evidence that the Defendant acted with a discriminatory motive.[8]

In sum, even if Plaintiff is deemed to have met his initial burden under the *McDonnell Douglas* balancing test, Defendant is entitled to summary judgment on Plaintiff's discrimination claims. Defendant has shown non-discriminatory reasons for the disparities in Plaintiff's salary, both in reference to those with dissimilar job duties (Etling, Mulhern, Rodriguez, and Paine) and those with similar job duties (Flanagan). Thus, even accepting that Plaintiff has presented evidence to raise a question as to whether he was similarly situated to other employees making higher salaries, he has failed to present evidence sufficient to create a triable issue that Defendant's non-discriminatory reasons were mere pretext, and that Defendant intentionally discriminated against Plaintiff because of his race or age.

---

[8]It bears noting that in attempting to make good his case of discrimination, Plaintiff focuses only on the race of the others who he claims were similarly situated. Thus, Plaintiff has not presented a scintilla of evidence in support of his age discrimination claim. In fact, many of the other employees Plaintiff cites as receiving more favorable treatment are in Plaintiff's age class.

## III. Conclusion

For the reasons stated in this Opinion, the Court hereby ADOPTS the Report and Recommendation dated August 13, 2007. Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motions (Dkt. Nos. 11, 15, 19), grant judgment in favor of Defendant, and close the case.


SO ORDERED.

Dated:     March 28, 2008
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List:

Wesley J. Lee
106 Van Wagner Rd. #6B
Poughkeepsie, NY 12603
*Pro Se Plaintiff*

Mark Craig Rushfield, Esq.
Shaw & Perelson, LLP
40 South Roberts Road
Highland, NY 12528
*Attorney for Defendant Poughkeepsie City School District*